## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

CAMPAIGN FOR ACCOUNTABILITY,
611 Pennsylvania Ave., SE, #337
Washington, DC 20003,

                Plaintiff,

    v.

UNITED STATES DEPARTMENT OF THE
TREASURY,
1500 Pennsylvania Ave., NW
Washington, DC 20220,

                Defendant.

Case No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

## I.     NATURE AND SUMMARY OF THE ACTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, challenging the failure of the United States Department of the Treasury ("Treasury") to comply with its obligation to provide records in response to a FOIA request submitted on March 21, 2017 (the "Request," a copy of which is attached as Exhibit 1 to this Complaint) by Plaintiff Campaign for Accountability ("CfA" or "Plaintiff"). The Request seeks information about possible communications between (or among) Treasury personnel, including personnel from the Internal Revenue Service ("IRS"), and certain members of the Trump Administration and others regarding hedge fund Renaissance Technologies, LLC ("Renaissance") or its co-Chief Executive Officer Robert Mercer.

2.     The Request seeks information that could shed light on whether Trump Administration officials or others who have received financial backing from Renaissance or the Mercer family have attempted to influence Treasury representatives in connection with the IRS's current dispute with Renaissance over tax liability stemming from its use of "basket option contracts."

3.      A basket option contract, as defined by the IRS, is a structured financial transaction "in which a taxpayer attempts to defer income recognition and convert short-term capital gain and ordinary income to long-term capital gain using a contract denominated as an option contract."[1]  Treasury and the IRS "believe this transaction . . . is a tax avoidance transaction."[2]

4.      In a July 2014 report, the Senate Permanent Subcommittee on Investigations found that Renaissance and other hedge funds conducted hundreds of billions of dollars in trades using basket option contracts created by Deutsche Bank AG and Barclays Bank PLC.  The Subcommittee further found that over more than a decade, Renaissance avoided more than $6 billion in taxes through its use of basket option contracts.

5.      Following the Senate report, the IRS issued guidance in July 2015 requiring that hedge funds pay additional taxes on short-term trades, and is reportedly seeking more than $6 billion dollars in back taxes owed by Renaissance as a result of its use of basket option contracts. Renaissance is reportedly contesting the IRS directive.

6.      In light of Renaissance and the Mercer family's significant financial backing of Trump associates and other high-level government officials, Plaintiff requested records from Treasury to help determine whether Renaissance's political allies have contacted Treasury on the company's behalf.

7.      Despite Plaintiff's repeated good-faith efforts to engage with Treasury to obtain the requested documents or resolve any disputes without litigation, Treasury has provided nothing—and has failed even to respond to Plaintiff's offer to narrow the Request.  FOIA does not countenance Treasury's idleness.

8.      Plaintiff accordingly seeks (i) a judgment from this Court declaring that Treasury is in violation of FOIA for failing to comply with the Request; and (ii) an injunction directing

---

[1] Internal Revenue Bulletin: 2015-30, Notice 2015-47 (July 27, 2015).

[2] *Id.*

that Treasury immediately and fully comply with the Request, and that Plaintiff will be charged no fees in connection with Treasury's compliance with the Request.

## II.   JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action, as well as personal jurisdiction over the parties, in accordance with 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552(a)(6)(C)(i).  The Court also has jurisdiction over this action in accordance with 28 U.S.C. § 1331.

10.     Venue lies in this District under 5 U.S.C. § 552(a)(4)(B).

## III.   PARTIES

### A.     <u>Plaintiff</u>

11.     Plaintiff Campaign for Accountability is a 501(c)(3) nonprofit, nonpartisan organization that uses research, litigation, and advocacy to investigate and expose alleged misconduct by or for public officials and organizations.  As part of its efforts, CfA uses government records made available to it under FOIA.

12.     CfA intends to analyze the information it receives through the Request and share it with the public through memoranda, reports, or press releases.  CfA also intends to disseminate to the public any such records through its website, www.campaignforaccountability.org.

13.     Treasury's failure to comply with the Request harms CfA's ability to advance its mission of providing full, accurate, and current information to the public on a matter of public interest, as contemplated by 5 U.S.C. § 552(a)(6)(C).

### B.     <u>Defendant</u>

14.     Defendant United States Department of the Treasury is a department of the Executive Branch of the United States Government, and is an "agency" within the meaning of 5 U.S.C. § 552(f).

15.     Treasury has possession and control of the requested records, and is responsible for complying with the Request.

IV.     **FACTUAL BACKGROUND FOR THE REQUEST**

    A.     <u>**Renaissance Is Involved in a Dispute with the IRS Regarding the Hedge
Fund's Use of Basket Option Contracts.**</u>

    16.     In connection with a July 22, 2014 hearing, the United States Senate Permanent

Subcommittee on Investigations released a report titled "Abuse of Structured Financial Products:

Misusing Basket Options to Avoid Taxes and Leverage Limits" (the "Senate Report").[3]  The

Senate Report states the Subcommittee's investigation offered a "detailed case study" of how

Deutsche Bank AG and Barclays Bank PLC developed two types of basket option contracts and

sold them to, among others, Renaissance, which "used them to avoid federal taxes and leverage

limits on buying securities with borrowed funds."[4]  The Subcommittee added that while that type

of option product "was identified as abusive in a public memorandum" by the IRS in 2010,

"taxes have yet to be collected on many of the basket option transactions and its use to

circumvent federal leverage limits has yet to be analyzed or halted."[5]

    17.     The Senate Report summarizes the nature and scope of the improper conduct:

> The basket option contracts examined by the Subcommittee
> investigation were used by at least 13 hedge funds to conduct over
> $100 billion in securities trades, most of which were short-term
> transactions and some of which lasted only seconds.  Yet the
> resulting short-term profits were frequently cast as long-term
> capital gains subject to a 20% tax rate (previously 15%) rather than
> the ordinary income tax rate (currently as high as 39%) that would
> otherwise apply to investors in hedge funds engaged in daily
> trading.  While the banks styled the trading arrangement as an
> "option" under which profits from short-term trades would be
> treated as long-term capital gains, in essence, the banks loaned the
> hedge funds money to finance their trading and allowed them to
> trade for themselves in highly leveraged positions in the banks'
> proprietary accounts and reap the resulting profits.  The banks
> offering the "options" benefited from the financing, trading, and

---

[3] The report is available at
https://www.hsgac.senate.gov/subcommittees/investigations/hearings/abuse-of-structured-financial-products_misusing-basket-options-to-avoid-taxes-and-leverage-limits.

[4] *Id.* at 1.

[5] *Id.*

other fees charged to the hedge funds initiating the trades.  In the
end, the trading conducted by the hedge funds using the basket
option accounts was virtually indistinguishable from the trading
conducted by hedge funds using their own brokerage accounts, and
provided no justification for treating the resulting short-term
trading profits as long-term capital gains.[6]

18.     The Subcommittee found that over a 14-year period, from 1999 to 2013,

Renaissance "held 60 basket option contracts for more than one year, used them to carry out an

investment strategy utilizing hundreds of millions of trades, virtually all of which lasted less than

12 months, and characterized the vast majority of the resulting $34 billion in trading profits as

long-term capital gains."[7]

19.     The Subcommittee further stated "specific data supplied by the banks with respect

to [Renaissance], the largest basket option user, suggests that the basket options may have been

used to treat short-term capital gains as long-term capital gains, resulting in estimated tax

avoidance of more than $6 billion."[8]

20.     The Subcommittee recommended, among other things, that the IRS "audit the

hedge funds that used Deutsche Bank or Barclays basket option products, disallow any

characterization of profits from trades lasting less than 12 months as long-term capital gains, and

collect from those hedge funds any unpaid taxes."[9]

21.     In July 2015, the IRS issued notices relating to tax treatment of basket option

contracts.  IRS Notice 2015-47, issued on July 27, 2015, stated Treasury and the IRS "are

concerned that taxpayers are using basket option contracts to inappropriately defer income

recognition and convert ordinary income and short-term capital gain into long-term capital gain,"

and thus Treasury and the IRS "are identifying basket option contracts and substantially similar

---

[6] *Id.*

[7] *Id.* at 6.

[8] *Id.* at 5.

[9] *Id.* at 7.

transactions as listed transactions."[10]  The Notice further provided that basket option contracts or substantially similar transactions "in effect on or after January 1, 2011" are listed transactions, and that "[p]ersons engaged in transactions in effect on or after January 1, 2011, must disclose the transactions . . . for each taxable year in which the taxpayer participated in the transactions, provided that the period of limitations for assessment of tax had not ended on or before July 8, 2015."

22.     According to public reports, the IRS is seeking more than $6 billion in back taxes from Renaissance as a result of its use of basket option contracts, which Renaissance is contesting.[11]

**B.**     **Renaissance and the Mercer Family Have Provided Significant Financial Support to Senior Trump Administration Officials and Other High-Level Political Figures.**

23.     Renaissance co-CEO Robert Mercer has been described as "a major force behind the Trump Presidency."[12]  Among other things, Mercer or members of his family:

- Donated $15.5 million to Make America Number 1, a super PAC (political action committee) that supported presidential candidate and U.S. Senator Ted Cruz during the 2016 Republican primaries, and later supported then-presidential candidate Donald Trump[13]—the super PAC was run by Kellyanne Conway, who now serves as a senior adviser in the Trump Administration;[14]

---

[10] A "listed transaction" is "a transaction that is the same as or substantially similar to one of the types of transactions that the IRS has determined to be a tax avoidance transaction."  *See* https://www.irs.gov/instructions/i8886/ch01.html.

[11] *See* Scott Christianson and Greg Gordon, *Billionaire Robert Mercer did Trump a huge favor. Will he get a payback?*, McClatchy (May 1, 2017), available at http://www.mcclatchydc.com/news/politics-government/article147454324.html.

[12] Jane Mayer, *The Reclusive Hedge-Fund Tycoon Behind the Trump Presidency: How Robert Mercer exploited America's populist insurgency*, The New Yorker (Mar. 27, 2017), available at http://www.newyorker.com/magazine/2017/03/27/the-reclusive-hedge-fund-tycoon-behind-the-trump-presidency.

[13] *See* https://www.opensecrets.org/pacs/pacgave2.php?cmte=C00575373&cycle=2016.

[14] Mayer, *The Reclusive Hedge-Fund Tycoon*, *supra*.

- Supported the careers of Conway, Stephen Bannon, and David Bossie (president of conservative advocacy group Citizens United), who became central figures in Trump's presidential campaign—and, in the case of Conway and Bannon, senior officials in the Trump Administration;[15]

- Invested $10 million to help expand the Breitbart News website and became co-owners of Breitbart News, the conservative media outlet Bannon ran before becoming chief executive of the Trump presidential campaign;[16]

- Helped finance an investigative think tank co-founded by Bannon, the Government Accountability Institute;[17] and

- "strongly supported the nomination of Jeff Sessions to be Trump's Attorney General."[18]

24.     In light of the dispute between the IRS and Renaissance regarding potentially more than $6 billion in amounts owed, as well as the Mercer family's financial support of Trump Administration officials and other high-level political figures, the Request seeks information that could shed light on whether Administration officials or other Mercer-backed political figures have communicated with Treasury about Renaissance or basket option contracts.

## V.     TREASURY VIOLATED FOIA BY FAILING TO PROVIDE THE REQUESTED RECORDS

### A.     The Request Is Procedurally and Substantively Proper.

25.     On March 21, 2017, Plaintiff submitted the Request to Treasury, seeking three categories of records encompassing the period January 1, 2014 to the present.[19]

---

[15] *Id.*

[16] Matea Gold, *The Mercers and Stephen Bannon: How a populist power base was funded and built*, The Washington Post (March 17, 2017), available at https://www.washingtonpost.com/graphics/politics/mercer-bannon/.

[17] *Id.*

[18] Mayer, *The Reclusive Hedge-Fund Tycoon, supra.*

[19] The phrase "to the present" is intended to, and does, run until Treasury obtains the records

*Footnote continued on next page*

26.     *First*, Plaintiff requested "records that reflect any communications to, from, or between any employee of Treasury and any of the following individuals regarding Renaissance Technologies or Robert Mercer" (collectively, "Item 1"):

1) Any White House employee, including but not limited to Steve Bannon, Kellyanne Conway, Rick Dearborn, Jared Kushner, and John Mashburn;

2) Any employee or representative of the Government Accountability Institute, including but not limited to its president Peter Schweizer;

3) Any employee or representative of Breitbart News;

4) Any employee or representative of Make America Number 1;[20]

5) David Bossie, or any other employee or representative of Citizens United;

6) Jeff Sessions, or any employee or representative of Senator Sessions' Senate office, or Senate campaign committee; and

7) Sen. Ted Cruz or any employee or representative of Senator Cruz's Senate office, his presidential campaign committee, or his Senate campaign committee.

27.     *Second*, Plaintiff requested "records that reflect any communications to, from, or between Secretary of the Treasury Steven Mnuchin, anyone in the office of the Secretary, any member of the Trump administration 'beachhead' transition team, or Special Assistant Jon Perdue, regarding Renaissance Technologies" (collectively, "Item 2").

28.     *Third*, Plaintiff requested "any Treasury records that include the terms 'Steve Bannon' or 'Kellyanne Conway'" (collectively, "Item 3").

29.     The Request thus "reasonably describes [the requested] records," in accordance with 5 U.S.C. § 552(a)(3)(A).

---

*Footnote continued from previous page*
responsive to the Request, which it has not yet done.

[20] The Request contained a minor typographical error, listing "Make America Number 1" as "Make American Number 1."

30.     Additionally, as provided in 5 U.S.C. § 552(a)(3)(A), the Request complies with the requirements set forth in 31 C.F.R. Part I, Subpart A, including with respect to the form of the Request.

**B.     Treasury Failed to Timely Respond to the Request, in Violation of FOIA.**

31.     Treasury failed to respond to the Request within 20 working days of its receipt of the Request, as required by 5 U.S.C. § 552(a)(6)(A)(i).

32.     Treasury's only communication to Plaintiff within the statutory 20-day period was a March 23, 2017 letter acknowledging receipt of the Request and stating only that Treasury was "ensuring [Plaintiff's] request addresses the minimum requirements as defined in 31 C.F.R. Part I, Subpart A" and that the Request "may require further submissions and/or justifications in order to be processed."  The letter added that a member of Treasury's FOIA team "may contact [Plaintiff] if needed."

33.     Indeed, notwithstanding its June 27, 2017 letter to Plaintiff discussed below, Treasury has never rendered a proper "determination," as contemplated by 5 U.S.C. § 552(a)(6)(A)(i), as Treasury has failed to inform Plaintiff of the scope of the documents it would produce as well as the scope of the documents (if any) it planned to withhold under any FOIA exemptions.

34.     Treasury cannot demonstrate that "exceptional circumstances," as contemplated by 5 U.S.C. § 552(a)(6)(C)(i) and defined in 5 U.S.C. § 552(a)(6)(C)(ii), exist, or that it is exercising due diligence in responding to the Request, as contemplated by 5 U.S.C. § 552(a)(6)(C)(i).  Indeed, as further detailed below, Treasury's response to the Request has been anything but diligent.

**C.     Treasury's June 2017 Letter to Plaintiff Was Inadequate.**

35.     The only even quasi-substantive response Plaintiff has received from Treasury came as a June 27, 2017 letter from a FOIA case manager (the "June 27 Treasury Letter," a copy of which is attached as Exhibit 2 to this Complaint), asserting "it is unclear what specific records

[Plaintiff] seek[s]" for Items 1 and 3 of the Request.  The case manager further contended that regarding those Items, the Request "do[es] not identify any specific Treasury records by location or name of a specific Treasury office or bureau."  The case manager requested that Plaintiff "resubmit [its] request containing a reasonable description of the specific records [it is] seeking, for example *the subject or a topic of the records* [Plaintiff] believe[s] are maintained at the Department of the Treasury," and added that "[u]pon receipt of a better description of the records [Plaintiff is] seeking, [Plaintiff] will be advised as to the status of [its] request."  (Emphasis in original).

     36.     The June 27 Treasury Letter was deficient or otherwise flawed in at least three respects:

     i.     It did not constitute a proper "determination" of the Request under 5 U.S.C. § 552(a)(6)(A)(i), as it failed to inform Plaintiff of the scope of the documents Treasury would produce as well as the scope of the documents (if any) it planned to withhold under any FOIA exemptions.

     ii.     Contrary to the case manager's assertion, the Request *does* provide "the subject or a topic of the records" Plaintiff believes are maintained at Treasury.  The Request in fact offers extensive detail regarding the types of records Plaintiff seeks, why it seeks them, and why those records are likely maintained at Treasury.

     iii.     The June 27 Treasury Letter asserts no deficiency with respect to Item 2 of the Request—which seeks "records that reflect any communications to, from, or between Secretary of the Treasury Steven Mnuchin, anyone in the office of the Secretary, any member of the Trump administration 'beachhead' transition team, or Special Assistant Jon Perdue, regarding Renaissance Technologies"—yet Treasury failed to provide records for that category.

D.     **Treasury Has Failed to Respond to Plaintiff's Good-Faith Efforts to Address the Asserted Deficiencies in the Request.**

37.     Notwithstanding the June 27 Treasury Letter's infirmities, and while expressly reserving its right to file suit at any time to seek appropriate relief with respect to the Request, Plaintiff attempted to address Treasury's stated concerns with the Request.  By letter of July 20, 2017 (the "July 20 CfA Letter," a copy of which is attached as Exhibit 3 to this Complaint), Plaintiff proposed to narrow and further clarify the Request in several respects.

38.     *First*, as to both Items 1 and 3, Plaintiff specified that Treasury's search should encompass records located at or otherwise maintained by (i) the Office of the Secretary of the Treasury; (ii) the Office of the Deputy Secretary of the Treasury; (iii) the Office of the Chief of Staff of the Treasury Department; (iv) the Internal Revenue Service; (v) the Department of the Treasury's Office of Inspector General; (vi) the Office of the Treasury Inspector General for Tax Administration; (vii) the Office of Tax Policy; and (viii) the Office of the Treasury Department General Counsel.  Plaintiff further instructed, however, that notwithstanding this limitation, Treasury should provide any requested records it finds through its search, even if they are not located at or otherwise maintained by the foregoing offices or bureaus.

39.     *Second*, Plaintiff proposed to limit Item 1, which currently encompasses "records that reflect any communications to, from, or between any employee of Treasury and any of the following individuals regarding Renaissance Technologies or Robert Mercer," to "records that consist of or reference any communications to, from, or between any political appointee or Senior Executive Service personnel in the Treasury Department and any of the following individuals regarding Renaissance Technologies or Robert Mercer."

40.     *Third*, Plaintiff proposed to modify Item 1's reference to "[a]ny White House employee" to "[a]ny employee within the Executive Office of the President."

41.     Accordingly, Item 1, as narrowed, encompasses "records that consist of or reference any communications to, from, or between any political appointee or Senior Executive

Service personnel in the Treasury Department and any of the following individuals regarding Renaissance Technologies or Robert Mercer:

    i.    Any employee within the Executive Office of the President, including but not limited to Steve Bannon, Kellyanne Conway, Rick Dearborn, Jared Kushner, and John Mashburn;

    ii.    Any employee or representative of the Government Accountability Institute, including but not limited to Peter Schweizer;

    iii.    Any employee or representative of Breitbart News;

    iv.    Any employee or representative of Make America Number 1;

    v.    David Bossie, or any other employee or representative of Citizens United;

    vi.    Jeff Sessions, or any employee or representative of Senator Sessions' Senate office, or Senate campaign committee; and

    vii.    Sen. Ted Cruz or any employee or representative of Senator Cruz's Senate office, his presidential campaign committee, or his Senate campaign committee."[21]

42.    *Fourth*, Plaintiff specified that the following domain names may be relevant to Item 1 (though Plaintiff noted this was not intended as an exhaustive list and did not relieve Treasury of the obligation to search for and provide information relating to other domain names, senders, or recipients):  breitbart.com; g-a-i.org; citizensunited.org; tedcruz.org; cruz.senate.gov; sessions.senate.gov; donaldjtrump.com; cambridgeanalytica.org; ca-commercial.com; ca-political.com; and pollingcompany.com.

43.    *Fifth*, Plaintiff proposed to limit Item 3 to records located in the hard-copy or electronic files (including e-mail) maintained by or for any political appointee or Senior Executive Service personnel in the Treasury Department.

---

[21] Steve Bannon left the White House in August 2017 and returned to Breitbart News.  The Request nonetheless encompasses records relating to him.

44.     Accordingly, Item 3, as narrowed, encompasses "any Treasury records located in the hard-copy or electronic files (including e-mail) maintained by or for any political appointee or Senior Executive Service personnel in the Treasury Department that include the terms 'Steve Bannon' or 'Kellyanne Conway.'"  Plaintiff instructed that Treasury's search should include records containing any descriptor that obviously refers to either Bannon or Conway (such as "S. Bannon," "K. Conway," "Bannon," "Conway," and the like).

45.     Additionally, given Treasury's significant delay in responding to the Request, Plaintiff proposed deadlines for Treasury's production of the requested records to Plaintiff: Plaintiff asked that all records falling into Item 2, which Treasury has never challenged, be provided by July 31, 2017, and that all records falling into Items 1 or 3 be provided by August 10, 2017.

46.     To date, more than two months after Plaintiff sent its letter, Treasury has provided neither a response nor any records.  Nor has the case manager responded to voicemails left for her by Plaintiff's counsel in an attempt to follow up on the July 20 CfA Letter.

47.     Treasury's dilatory and perfunctory responses to the Request fall far short of its obligations under FOIA.  Judicial intervention is necessary so that Plaintiff can finally receive the records to which it is entitled.

## VI.     PLAINTIFF IS ALSO ENTITLED TO A WAIVER OF FEES ASSOCIATED WITH PROCESSING THE REQUEST

48.     Plaintiff is entitled to a waiver of fees associated with processing the Request—on two, independent grounds.

49.     *First*, the Request is for non-commercial purposes and concerns the operations of the federal government.  Specifically, the disclosures will likely contribute to a better understanding by the general public of government procedures and the interaction of government officials and business.  CfA, a 501(c)(3) nonprofit organization, intends to use the requested records, and its analysis of them, to educate the public through reports, press releases, or other

media, and will make materials it receives through the Request available on its public website. CfA is therefore entitled to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).

50.     *Second*, CfA qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 31 C.F.R. § 1.7(a)(3).  CfA routinely and systematically disseminates information, including materials received through FOIA requests, to the public through its website.  CfA also analyzes materials it receives through FOIA requests and discusses its findings with other members of the media.  CfA is therefore entitled to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 31 C.F.R. § 1.7(a)(3).  Indeed, the June 27 Treasury Letter acknowledges that CfA is a 'representative of the news media' requester" entitled to "search, review, and the first 100 pages at no charge," as well as a waiver of duplication of hard-copy records below $25.  The letter further states Treasury will "make every effort to transmit [Plaintiff]'s final response via email or CD free of charge."

51.     Additionally, as provided by 5 U.S.C. § 552(a)(4)(A)(viii), Treasury cannot assess *any* search or duplication fees on Plaintiff because Treasury did not comply with the statutorily prescribed time limits for responding to the Request and no "exceptional circumstances," as contemplated by 5 U.S.C. § 552(a)(4)(A)(viii)(II)(cc) and defined in 5 U.S.C. § 552(a)(6)(C)(ii), exist.

## VII.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

52.     Plaintiff incorporates by reference and realleges the preceding allegations as though fully set forth in this paragraph.

53.     Plaintiff, through its Request, properly requested records within Defendant Treasury's possession or control.

54.     Treasury has neither produced any records to Plaintiff in response to the Request nor made any explicit or justified claims of statutory exemption with respect to the requested records.

55.     Because Treasury failed to timely provide a determination, within the meaning of 5 U.S.C. § 552(a)(6)(A)(i), regarding the Request, Plaintiff is deemed to have exhausted its administrative remedies with respect to the Request, as set forth in 5 U.S.C. § 552(a)(6)(C)(i) and 31 C.F.R. § 1.5(k).

56.     Treasury's failure to provide a determination with respect to the Request and to release the requested records violated FOIA.

57.     Plaintiff is therefore entitled to declaratory and injunctive relief with respect to the requested records.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.     Declare that Defendant Treasury violated FOIA by failing to make a timely determination with respect to Plaintiff's March 21, 2017 Request and by failing to provide the requested records to Plaintiff;

B.     Order that Treasury immediately conduct a reasonable search for, duplicate, and provide to Plaintiff all records responsive to the Request, spanning from January 1, 2014 until the time Treasury obtains the requested records, at no cost to Plaintiff;

C.     Order that to the extent, if at all, Treasury reasonably determines any exemptions under FOIA apply in whole or part to any of the requested records, Treasury must provide to Plaintiff a "*Vaughn* index" with respect to any such records, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973);

D.     Retain jurisdiction of this action to ensure that the Request is properly processed and that no requested records are improperly withheld;

E.     Award reasonable attorney fees and costs to Plaintiff or its counsel in connection with this action, in accordance with 5 U.S.C. § 552(a)(4)(E); and

F.      Grant such other relief as the Court may deem just and proper.


Dated:  October 18, 2017                 By:    /s/ *Steven E. Fineman*
                                                Steven E. Fineman

                                         Steven E. Fineman (D.C. Bar # 452744)
                                         Michael J. Miarmi (*pro hac vice* application forthcoming)
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                         250 Hudson Street, 8th Floor
                                         New York, NY 10013-1413
                                         Telephone:  (212) 355-9500
                                         Facsimile:   (212) 355-9592
                                         sfineman@lchb.com
                                         mmiarmi@lchb.com

                                         *Attorneys for Plaintiff*